**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| EDUARDO ESTRADA MEDINA, | : | MOTION TO VACATE |
| BOP Reg. # 70872-019 | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
|     v. | : | 2:17-CR-0023-RWS-JCF-2 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 2:19-CV-0067-RWS-JCF |

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

Movant Eduardo Estrada Medina, a federal prisoner currently confined at the Federal Correctional Institution in Oakdale, Louisiana, has filed a *pro se* 28 U.S.C. § 2255 motion to vacate challenging his guilty plea convictions and sentences in Case No. 2:17-cr-0023-RWS-JCF-2.  (Doc. 63.)  For the reasons stated below, **IT IS RECOMMENDED** that the § 2255 motion be **DENIED IN PART** as to Grounds 1 and 2 and that no certificate of appealability issue with respect to these claims.

**I.    PROCEDURAL HISTORY**

On June 27, 2018, a federal grand jury returned a 27-count indictment against Movant and one other individual, charging Movant with possession of a firearm by an alien, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2) ("Count 22"); illegal

reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2) ("Count 23"); possession with intent to distribute more than 500 grams of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a) and (b)(1)(A)(viii) ("Count 24"); possession of a short-barreled rifle in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(B)(i) ("Count 25"); receipt and possession of an unregistered silencer, in violation of 26 U.S.C. §§ 5861(d) and 5871 ("Count 26"); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count 27"). (Doc. 9 at 5-8.) Movant retained counsel to represent him in his criminal proceedings. (See Docs. 18, 21.) Ultimately, Movant pled guilty to Counts 24 and 25 pursuant to a written plea agreement. (See Doc. 56, Doc. 56-1.)

Movant's plea agreement provided that he was entering into a binding plea under Fed. R. Crim. P. 11(c)(1)(C) under which he would plead guilty to Counts 24 and 25 and receive a sentence of 20 years' imprisonment, representing consecutive 10-year mandatory-minimum sentences for each count. (Doc. 56-1 at 6, 10.) In exchange for his binding plea, the government would dismiss the remaining counts and withdraw its 21 U.S.C. § 851 sentencing enhancement. (Id. at 5-6.) The plea agreement also contained a provision titled "Limited Waiver of Appeal," providing

that Movant voluntarily and expressly waived his right to appeal and his conviction and sentence and the right to collaterally attack his conviction and sentence on any ground unless (1) the District Court sentenced Movant above the sentencing guideline range as calculated by the District Court, and/or (2) the government appealed the sentence. (Id. at 12-13.) Additionally, claims of ineffective assistance of counsel were excepted from the collateral attack waiver. (Id. at 13.) Both Movant and his attorney signed the plea agreement at the bottom. (Id. at 14.)

At his change-of-plea hearing, Movant and his attorney authenticated the plea agreement and Movant testified that he had signed the agreement. (Doc. 67 at 2-3.) Movant agreed that he had reviewed the plea agreement, understood the terms, and voluntarily agreed to it. (Id. at 3.) The District Court informed Movant of the rights that he was waiving by pleading guilty, including the right to plead not guilty, the right to a trial by jury where he would be presumed innocent and the government would be required to prove his guilt beyond a reasonable doubt, the right to be represented by counsel at all times, the right to see, hear, and cross-examine witnesses, the right to elect to or decline to testify in his own defense, and the right to compel the attendance of witnesses to testify in his defense. (Id. at 5-7.) In each instance, Movant testified that he understood. (Id.)

3

The government's attorney read the terms of the plea agreement into the record, including the maximum penalties that Movant faced, and Movant agreed that the government's recitation reflected his understanding of the plea agreement. (Id. at 7-11.) The Court then explained to Movant that he was entering a binding plea agreement for a particular sentence that the Court would either accept or reject after reviewing the presentence report. (Id. at 11.) The Court informed Movant that, if it accepted the binding plea agreement, Movant would be bound by its terms and the Court would impose the recommended 20-year sentence, but, if the Court rejected the binding plea agreement, Movant would have an opportunity to withdraw his guilty plea. (Id. at 11-12.) Movant testified that he understood. (Id. at 12.) The Court asked Movant if anyone had made any promise not contained in the plea agreement to induce his guilty plea and Movant testified "no." (Id.) The Court also asked Movant if anyone had threatened or forced him to plead guilty, or told him that any adverse action would be taken against him if he did not plead guilty, and Movant testified "no." (Id.)

The Court directed the government to read into the record the charges to which Movant was pleading guilty and their elements. (Id.) The government's attorney stated that Movant was pleading guilty on Count 24 to possession with intent to

4

distribute more than 500 grams of methamphetamine and on Count 25 to possession of a short-barreled rifle in furtherance of a drug-trafficking crime and recited the elements of those offenses. (Id. at 12-13.) Movant testified that he understood the charges to which he was pleading guilty. (Id. at 13.)

The government then summarized the evidence that it would have presented at trial, including that federal agents observed Movant's co-defendant purchase a pistol from a licensed firearms dealer and then followed the co-defendant. (Id. at 14.) Ultimately the co-defendant drove to Movant's residence and federal agents observed him hand the firearm to Movant. (Id.) The agents then approached Movant and his co-defendant. (Id.) A search of Movant's residence uncovered 8.6 kilograms of methamphetamine, $148,000 in cash, eight firearms including a short-barreled rifle, over a thousand rounds of ammunition, a silencer, a heat sealer, two money counters, baggies, gloves, four digital scales, and 17 cell phones. (Id. at 14-15.) An immigration officer determined that Movant was an alien unlawfully present in the United States and had been previously convicted of felony cocaine trafficking. (Id. at 15.) The government further stated that it would have presented expert testimony that (1) the substance found in Movant's residence was methamphetamine, (2) the large quantity of methamphetamine, large amount of cash, money counter, heat

sealer, baggies, scales, and multiple cell phones indicated that the methamphetamine was being trafficked, (3) that the presence of firearms in close proximity to the drugs and cash indicated that the firearms were possessed for the purpose of protecting the drugs and money, and (4) that one of the firearms was a short-barreled rifle. (Id. at 15-16.)

Movant testified that he agreed with the government's factual basis. (Id. at 16.) The District Court then asked Movant if he admitted (1) that he was in possession of methamphetamine on June 6, 2017, with the intent to distribute it, (2) that the quantity of methamphetamine was more than 500 grams, and (3) that he possessed the short-barreled rifle in furtherance of his drug trafficking activities. (Id.) Movant replied "[y]es" in each instance. (Id.)

Referencing the government's earlier recitation of the applicable maximum penalties, the District Court asked Movant if he understood the maximum penalties that he faced. (Id. at 16-17.) Movant testified that he understood. (Id.) The Court then explained to Movant the operation of the Sentencing Guidelines, and that the Court could impose a sentence that was more or less severe than the sentence recommended by the Guidelines. (Id. at 17.) The Court also reiterated that the offenses to which Movant was pleading guilty carried 10-year mandatory minimum

6

sentences, and that the offense in Count 25 required that the sentence be imposed consecutively. (Id.) Movant testified that he understood. (Id.)

Turning to the appeal waiver provision in the plea agreement, the Court informed Movant of a criminal defendant's right to appeal and to file a collateral attack and explained that he was giving up those rights except in the three circumstances listed in the plea agreement, which the Court summarized. (Id. at 17-18.) Movant testified that he understood. (Id. at 18.)

The Court then explained the collateral consequences of pleading guilty to felony offenses, and specifically that his guilty pleas would carry immigration consequences, including that he would likely be deported from the United States and that his convictions would affect his ability to ever reenter the country legally. (Id. at 19.) Movant testified that he understood. (Id.) Movant then testified that he had sufficient opportunities to talk about his case with his attorney, that he was satisfied with his attorney's representation, and that he had no further questions. (Id. at 20.)

The District Court then found that Movant understood the charges and the consequences of his plea, that the plea was supported by a factual basis, and that the plea was free of coercive influence of any kind. (Id. at 20-21.) The Court reiterated

7

that it would reserve final approval of the binding plea agreement pending receipt of the presentence report. (Id. at 21.)

Ultimately, the District Court accepted Movant's binding guilty plea and sentenced him to a total of 20 years' imprisonment. (See Doc. 61; Doc. 62 at 1-2.) Movant did not pursue a direct appeal of his convictions and sentences. The instant § 2255 motion followed.

## II.  28 U.S.C. § 2255 MOTION

### A.  GROUNDS 1 & 2

Movant's § 2255 motion and supporting brief enumerate three grounds for relief.[1] (See generally Docs. 63, 63-1.) In Ground 1, Movant alleges that his counsel was ineffective for failing to adequately investigate his case before advising him to plead guilty. (See Doc. 63 at 4; Doc. 63-1 at 4.) Specifically, Movant argues that he told his attorney that he was in the process of moving into a residence where drugs and firearms were found, and that he had no knowledge of any contraband in the

---

[1] Movant's pleadings also enumerate a Ground 4; however, this Ground presents legal argument that he is entitled to an evidentiary hearing and does not contain any additional substantive grounds for relief. (See Doc. 63 at 8; Doc. 63-1 at 13-14.)

8

mobile home. (Doc. 63-1 at 4.) Movant states that his U-Haul truck was parked outside the mobile home, the U-Haul key was in his pocket, no contraband was discovered in the room that a few of his belongings had been moved into, and the ledgers and MoneyGram receipts did not contain his handwriting. (Id. at 5-7.) Accordingly, Movant argues that he would not have pled guilty if his lawyer had adequately investigated a *mens rea* defense to the drugs and firearms found inside the mobile home. (Id. at 7-8.)

In Ground 2, Movant argues that his counsel was ineffective for failing to adequately investigate Jose David Lopez-Hernandez prior to filing a motion to suppress. (Id. at 8.) Movant states that Lopez-Hernandez, the person who allegedly gave federal agents consent to search the mobile home, did not speak any English. (Id. at 10.) Movant emphasizes that the agents' report does not indicate that Lopez-Hernandez was asked for consent in Spanish, or that he gave consent based on body language or other means. (Id.) Movant argues that, under the totality of the circumstances, the language barrier prevented Lopez-Hernandez from giving meaningful consent, and that his attorney was ineffective for failing to adequately investigate this ground for suppression of the evidence discovered inside the mobile home. (Id. at 11-12.) Movant also argues that federal agents lacked probable cause

9

to search his mobile home after observing his co-defendant hand him a single firearm outside the home. (Id. at 9-10.)

Movant further argues in Ground 2 that his counsel was ineffective for failing to adequately investigate the law prior to filing a motion to dismiss the indictment. (Id. at 12.) Movant states that the government's speedy deportation of Lopez-Hernandez deprived him of his Sixth Amendment confrontation rights, and that statements by deported persons were used in grand jury proceedings to indict him. (Id. at 12-13.) As a result, Movant argues that his counsel was ineffective for failing to move to dismiss the indictment based on violations of his Sixth Amendment rights. (Id. at 13.)

The government responds that Movant has not alleged, much less shown, that but for counsel's allegedly deficient performance he would not have pleaded guilty but would have proceeded to trial. (Doc. 70 at 8-9.) The government notes that the record contains ample evidence that Movant was aware of and possessed the drugs and guns found in the mobile home, and that his counsel's pretrial motion practice demonstrates that his attorney was aware of and had investigated these potential lines of defense but made a strategic decision to pursue plea negotiations. (Id. at 10-11.) The government further responds that Movant's suppression motion was unlikely to

10

succeed or otherwise result in the exclusion of evidence found in the mobile home, and that the validity of the search was not contingent on Lopez-Hernandez's consent. (Id. at 12-19.)  The government states that Movant's counsel did file a motion to dismiss the indictment based on the deportation of certain witnesses but made a reasonable strategic decision to withdraw this motion and pursue plea negotiations. (Id. at 20-22.)  The government also argues that Movant has not shown prejudice where he was originally facing six felony counts, many of which carried potential sentences of life imprisonment.  (Id. at 12.)  Movant reiterates the merits of his claims in reply.  (See generally Doc. 72.)

Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings, including pre-plea claims of ineffective assistance of counsel.  United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003); Baird v. United States, 445 F. App'x 252, 254 (11th Cir. 2011).  Thus, a defendant who enters a guilty plea can attack only "the voluntary and knowing nature of the plea."  Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992).  For a plea to be knowing and voluntary, the court accepting the plea must comply with Fed. R. Crim. P. 11, and, in particular, address three "core concerns" by ensuring that: (1) the guilty plea is voluntary and free from coercion; (2) the defendant understands the nature of the

11

charges; and (3) the defendant knows and understands the consequences of his plea. United States v. Bell, 776 F.2d 965, 968 (11th Cir. 1985). In evaluating the knowingness and voluntariness of a plea, the representations of the defendant at the plea hearing, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Courts apply a "strong presumption" that statements made by a defendant during the plea colloquy are true. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). Therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

A defendant can overcome the otherwise voluntary and intelligent character of his guilty plea only if he can establish that the advice he received from counsel in relation to the plea was not within the range of competence demanded of attorneys in criminal cases, in violation of Strickland v. Washington, 466 U.S. 668 (1984). Premo v. Moore, 562 U.S. 115, 121, 126 (2011). To make a successful claim of ineffective assistance of counsel, a defendant must show both that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687. Deficient performance "requires showing that counsel made errors

so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  To establish prejudice in the context of a guilty plea, a defendant must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Premo, 562 U.S. at 129 (quotations omitted).  This means that "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015).  Additionally, "[c]onclusory allegations of ineffective assistance are insufficient" to warrant habeas relief. Wilson, 962 F.2d at 998 (quotation marks omitted).

As discussed in detail above, the District Court conducted a lengthy and thorough plea colloquy with Movant, satisfying the core concerns of Rule 11.  With respect to voluntariness and lack of coercion, Movant testified that he was not threatened or forced into pleading guilty, and that no one had made any promises not contained in the plea agreement. (Doc. 67 at 12.)  As to Movant's understanding of the nature of the charges, the government read the elements of the offenses out loud on the record and recited the facts it expected to prove at trial. (Id. at 12-16.)  Movant testified that he understood the charges, that he did not have any disagreements with

13

the factual basis, and that he did in fact commit the acts alleged. (Id. at 16.) Finally, as to Movant's knowledge of the consequences of his plea, the Court ensured that Movant understood that he was entering a binding plea agreement for a 20-year sentence and the Court explained in detail the rights he would give up and the collateral consequences of his guilty plea. (Id. at 5-7, 11-12, 16-20.) Movant testified repeatedly that he understood. (See id.) Movant's sworn statements carry a strong presumption of truth, and Movant has not met his heavy burden of showing that they were false. Medlock, 12 F.3d at 187; Rogers, 848 F.2d at 168.

Thus, the record shows that Movant's guilty plea complied with the requirements of Rule 11 and was knowing and voluntary. Bell, 776 F.2d at 968. Consequently, Movant's valid guilty plea waived any ineffective-assistance-of-counsel claim that occurred prior to the entry of his plea. Patti, 337 F.3d at 1320.

Moreover, to the extent that Movant argues that his attorney failed to investigate his case and effectively pursue his motions to suppress and to dismiss the indictment, these claims are belied by the record. As noted above, Movant testified that he had adequate time to discuss his case with his attorney, that he was satisfied with his attorney's representation, and that he had no other questions for his attorney. (See Doc. 67 at 20.) Movant has not presented any evidence showing that his

14

testimony was false. Medlock, 12 F.3d at 187; Rogers, 848 F.2d at 168. Movant also has not shown that it would have been rational under the circumstances to reject the plea agreement where he was charged with four additional federal felony offenses that were dismissed pursuant to the plea agreement and subject to enhanced sentences under 21 U.S.C. § 851. Diveroli, 803 F.3d at 1263. Movant's Grounds 1 and 2 are due to be denied.

### B. GROUND 3

In Ground 3, Movant states that his counsel was ineffective for failing to file a direct appeal despite being instructed to do so. (Doc. 63 at 7; Doc. 63-1 at 13.) Movant states that, after sentencing, he instructed his counsel to file an appeal because he "was looking for ways to litigate his case further." (Doc. 63 at 7; Doc. 63-1 at 13.) Notwithstanding his instructions, his counsel failed to do so. (Doc. 63 at 7; Doc. 63-1 at 13.)

The government responds that the record is not sufficiently developed to resolve this claim and that an evidentiary hearing is necessary. (Doc. 70 at 23.) Movant's reply does not specifically address this ground for relief. (See generally Doc. 72.)

15

"[A]n attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner *per se*." Gomez-Diaz v. United States, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)). "[A] defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." Id. at 792 (citing Flores-Ortega, 528 U.S. at 484).

The record before the Court is not sufficiently developed to determine whether Movant instructed his counsel to file an appeal. Thus, an evidentiary issue on this single issue is required. See Gaston v. United States, 237 F. App'x 495 (11th Cir. 2007). The Court **ADVISES** Movant that, if he were ultimately to be granted relief on this claim, it would not result in the immediate vacatur of his conviction and sentence, but rather an opportunity to file an out-of-time appeal to the Eleventh Circuit Court of Appeals. See Montemoino v. United States, 68 F.3d 416, 417-18 (11th Cir. 1995) (holding that where a defendant pleads guilty and counsel fails to file a notice of appeal despite defendant's request to do so, the defendant is entitled to an out-of-time appeal). As set forth above, Movant has not alleged any potentially meritorious grounds for appeal in his § 2255 motion. Moreover, any appeal will

likely be barred by the valid appeal waiver in his plea agreement.  See <u>United States v. Bushert</u>, 997 F.2d 1343, 1351 (11th Cir. 1993) (holding that an appeal waiver will be enforced if it was made knowingly and voluntarily).  Under such circumstances, an out-of-time appeal will result only in a later unfavorable outcome in the appellate court.  Moreover, an evidentiary hearing may result in certain burdens and disruptions on Movant.[2]

If Movant nevertheless desires an evidentiary hearing **solely on his claim that his attorney was ineffective for failing to file a notice of appeal despite being instructed to do so**, he is **ORDERED** to file a written response to that effect within **FOURTEEN (14) DAYS** of service of this Report and Recommendation.  If Movant fails to file such a statement, the undersigned will recommend that the District Court deem this ground for relief abandoned and deny it without a hearing.

---

[2] Unless arrangements can be made for Movant to participate by video which is by no means a certainty, attending an evidentiary hearing would remove Movant from his current place of incarceration with no guarantees of return to that facility, much less his present cell; would interrupt his participation in any drug treatment or other rehabilitation programs in which he may be enrolled, the completion of which may be required in order to obtain a reduction in his sentence; and would require interim housing at any of a number of various local jail facilities for an indeterminate time period pending reassignment by the Federal Bureau of Prisons.

### III. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Because reasonable jurists would not debate the resolution of Movant's Grounds 1 and 2, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED** with respect to these claims. See <u>id.</u> If the District Court adopts this recommendation and denies a certificate of appealability, movant is advised that he "may not appeal the denial but

may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

## IV.  CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the 28 U.S.C. § 2255 motion [63] be **DENIED IN PART** as to Movant's Grounds 1 and 2 and that a certificate of appealability be **DENIED** with respect to Movant's Grounds 1 and 2.

Movant is **ORDERED** to file a written response indicating whether he desires an evidentiary hearing on his claim that his attorney was ineffective for failing to file a notice of appeal despite being instructed to do so within **FOURTEEN (14) DAYS** of service of this Report and Recommendation. If Movant fails to file such a statement, the undersigned will recommend that the District Court deem this ground for relief abandoned and deny it without a hearing.

**SO ORDERED AND RECOMMENDED**, this 29th day of September, 2021.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge